249 P.2d 941

**STATE v. ELIAS.**

No. 1028.

Supreme Court of Arizona.

Nov. 10, 1952.

Carlos G. Robles, Tucson, for appellant.

Robert Morrison, County Atty. of Pima County, Tucson, Fred O. Wilson, Atty. Gen., for appellee.

STANFORD, Justice.

Appellant, Ronald Elias, who will be termed defendant, was charged in an information with the crime of receiving stolen property, the information alleging the date as on or about the 18th day of November, 1951, and alleging the act to have occurred in the county of Pima, state of Arizona. Defendant asked for a bill of particulars and since the same will aid in the matter of the facts of the case, we herewith quote:

"The beef referred to in the information is a carcass of a white-faced cow belonging to one Connie Nagley and killed on or about the evening of Sunday, November 18, 1951, by Carl Clark and Bill Moyer on the range of Connie Nagley located approximately four (4) miles north of Oracle, Arizona and slightly to the west of the Oracle-Tiger highway. The said beef weighed about four hundred (400) pounds when quartered and dressed."

Testimony in the case showed that about a month before the time in question, Bill Moyer borrowed a meat saw from this defendant. It also showed that in the fall of 1951, Moyer purchased a 1939 Chevrolet sedan from the father of defendant, Alex Elias, Sr., and used the car to haul meat on several occasions. In the early part of 1951 Moyer approached the defendant at

the Pioneer Meat Market, which was owned by the father of defendant, and asked defendant if he could handle "hot meat". Defendant refused, but a week later he was approached again by Moyer and said that he could use the meat at the price of 22 cents a pound. This defendant was the manager of the Pioneer Meat Market conducted by his father, Alex Elias, Sr.

The testimony shows that on the evening of Sunday, the 18th day of November, 1951, the said Moyer and Carl Clark, the latter being an employee at the said meat market, delivered the meat in question to the Pioneer Meat Market and early Monday morning Clark called for this defendant and took him to the market where they both skinned the cow, boned it out, segregated it and made hamburger out of the trimmings. On the same day Moyer came in and collected $80 from Ronald Elias, this defendant, and gave $40 to Carl Clark. The testimony of the state further showed that during the year 1951, Moyer brought "hot meat" to Elias' market on sixteen other occasions.

On the trial of this defendant for the crime charged he was convicted and sentenced to serve a term of one to three years in the state penitentiary, and from that judgment of conviction he has taken this appeal.

By assignment defendant objected to a certain instruction given by the court, claiming that,

"An instruction as to the immateriality of the exact date of the offense if within the statutory period is misleading and erroneous, where the time of the commission of the crime is material, as where the time is definitely fixed by the state's evidence and the defense is an alibi based upon that time."

It is a claim of the defendant that for a few days in November, including the 18th and 19th days of that month, he was in Hermosillo, Mexico.

It is further claimed by the defendant that

"Where the prosecution elects to proceed for an offense as of a certain date, the instruction should limit the jury to finding whether the offense was committed on that date."

The transcript shows that both Moyer and Clark stated that the defendant was in Tucson on November 19th, and the transcript shows that defendant's witnesses testified differently, but the jury believed the state's case.

The matter of such time is determined in our case of Hash v. State, 48 Ariz. 43, 59 P.2d 305. We find no merit to defendant's claim.

Defendant assigns as error that the trial court in its instructions omitted in one instance the element of intent of the receiver of stolen property to deprive the owner from again possessing the property, or to receive it for his own gain.

■ As to the particular instruction we grant that defendant is right and intent is an element in the crime charged. But instructions must be taken as a whole, and after having at an earlier point correctly informed the jury that this element of intent was a necessary component to complete the crime, the trial court said in one of the instructions:

"I charge you that in every crime or public offense, there must exist a union or joint operation of act and intent or criminal negligence. The intent or intention is manifested by the circumstances connected with the offense. * * *"

Further on in the instructions the court stated:

"Another purpose for which such evidence can be considered is to prove that the defendant entertained the intent or had the guilty knowledge which are necessary elements of the alleged crime for which he is now on trial. * * *"

■■ Leaving out an essential element in defining a crime becomes reversible error in case an instruction omitting same is not covered completely by others. State v. Singleton, 66 Ariz. 49, 182 P.2d 920.

Defendant's next assignment of error also complains of instructions given. This is understood by quoting the last part of one of the instructions:

"* * * Thus if a thief has an agreement with a person that he will steal certain property and leave it at a place which is owned, leased or under control of that person, and if the thief does steal the agreed property and does leave it at the agreed place, then, under the law, it may be said that the person having control of that place has received stolen property."

■■ Defendant insists that it is error to instruct that the jury may infer a fact of which there is no evidence and this is true. But the testimony shows that there was an agreed price to be paid, the sum of 22 cents per pound; that in furtherance of that, on the morning following the delivery of the beef in question to the market of this defendant, defendant went down to the market and prepared the beef for sale and paid the money that was due according to the understanding. There was therefore sufficient testimony to support the instruction given by the court.

■ Defendant's last contention is, "* * * that Carl Clark and Bill Moyer, by aiding the defendant to dispose of the beef stolen by them and aiding him in preventing the owners of again possessing the property stolen, and by aiding the defendant to convert the property to his own use and gain, they became accomplices and, therefore, under the provisions of section

44–1819 of the Arizona Code, Annotated, 1939, the defendant could not have been convicted. * * *"

In this court's very recent case of State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843, 849, we said:

"As to defendant's contention that Jeremy, the thief, was an accomplice in the commission by defendant of the offense of knowingly receiving stolen goods, we hold that the trial court correctly instructed the jury that Jeremy was not an accomplice and we adhere to the test applied and the rule laid down in the earlier cases, our latest expression being State v. Chitwood, 73 Ariz. 161, 239 P.2d 353."
This definitely disposes of the contention of the defendant in this regard.

We have carefully considered the rights of the defendant, and those of the state, and after such consideration we have come to the conclusion that the judgment should be affirmed, and it is so ordered.

UDALL, C. J., DE CONCINI and LA PRADE, JJ., and KELLY, Superior Court Judge, concur.

PHELPS, J., being unable to take part in the case, the Honorable HENRY C. KELLY, Judge of the Superior Court of Yuma County, participated in his stead in the determination of this appeal.