**307 P.2d 106**

STATE of Arizona, Appellee,

v.

Thomas Hershal COLVIN, Appellant.

No. 1090.

Supreme Court of Arizona.

Feb. 19, 1957.

Hymen D. Goldberg, Tucson, for appellant.

Robert Morrison, Atty. Gen., H. B. Daniels, Asst. Atty. Gen., and Raul H. Castro, County Atty. of Pima County, Tucson, for appellee.

UDALL, Chief Justice.

Thomas Hershal Colvin (defendant-appellant) was convicted by a jury of the

crime of aggravated assault upon the person of one Bertha Schochow. After denial of motions in arrest of judgment and for a new trial, the court rendered judgment of conviction against defendant and imposed an indeterminate sentence of not less than one year nor more than eighteen months in the State penitentiary. This appeal followed.

This is a companion case to State v. Colvin, No. 1087, 81 Ariz. ——, 307 P.2d 98. While separate complaints were filed before the magistrate against Margaret and her son Tom, a consolidated preliminary hearing was conducted, but thereafter separate trials were held in the superior court. Both defendants, however, were represented throughout by the same counsel, and the same prosecutors represented the State. This explanation is made because many of the assignments of error and propositions of law urged in case No. 1087, supra, are identical with those presented on this appeal. We shall, therefore, in this decision, avoid a discussion of the points determined in the companion case.

The record is crystal clear that the incident relied upon by the State to establish a felonious assault by defendant occurred at the Twin Pines Rest Home in Tucson on Sunday evening, August 21, 1955, between 8:30 and 9:00 p. m. Esther Bristow, one of the attendants, testified that Mrs. Schochow had been calling for her son Wilbur, and at that time she saw defendant Tom Colvin enter the room occupied by Bertha Schochow and Elizabeth Naas; thereafter Mrs. Bristow observed the following:

"He went up to her [Mrs. Schochow] and slapped her across her mouth and she put up her arm to protect herself and he hit it aside and slapped her again and told her to shut her mouth because she had been fed and had her hair combed and stuff, she should shut her mouth."

Mrs. Naas, the other aged occupant of the room, whose testimony given at the preliminary hearing was read to the jury, corroborated this testimony, though defendant would have us believe Mrs. Naas testified solely about another incident occurring on August 20th. Unquestionably she was somewhat uncertain and vague as to the exact date, but the jury may well have concluded Mrs. Naas was referring to the same incident.

Defendant took the witness stand in his own defense. While he flatly testified he did not slap Mrs. Schochow at the time relied upon by the State, nor at any other time, his principal defense, nevertheless, was an alibi. Unequivocally he testified he left the rest home the evening in question between 6:30 and 6:40 p. m. and did not return until approximately 10:45 p. m. The testimony of several friends and acquaint-

ances corroborated defendant, i. e., placed him elsewhere at the time of the alleged assault. Hence, defendant was in no wise handicapped in the presentation of his evidence to prove an alibi. The issue was clear cut. The jury elected to believe the State's witnesses.

■ Defendant assigns as error the giving of the following instruction:

"Another element that you must find is that the crime charged was committed some time before the filing of the information which, in this case, was on September 16, 1955, but the State is not bound to prove the alleged crime was committed on any particular day as the State has the right to prove the alleged crime was committed on or about August 21st, 1955, the date alleged in the information as long as it is proved to have been committed at any time within five years prior to the filing of the information." See, Section 44–725, A.C.A.1939.

Coupled with this is another assignment based upon the court's refusal to give an instruction submitted by defendant which would have limited the jury's consideration to whether the offense charged was committed on 21 August, 1955, and on no other day. Basically defendant's argument is the same as that made in State v. Elias, 74 Ariz. 374, 376, 249 P.2d 941, 942, and in

Hash v. State, 48 Ariz. 43, 59 P.2d 305, namely, that when, as here, the defense is an alibi, time is an important issue to defendant. The contention was expressly rejected in both cases; we need only determine if the elements as stated in the Hash case, supra, were satisfied here. There an instruction was challenged which stated that the exact date alleged in the information was immaterial. In upholding its correctness, the court stated as follows:

"While the identification and isolation as to time and place of the act relied upon are necessary, the precise day or date of its occurrence need not be designated. But if the election is that it occurred on or about a given date, * * * it is sufficient under the law, and evidence supporting such election will sustain a conviction." 48 Ariz. at page 51, 59 P.2d at page 308.

The information filed against Tom Colvin recited the occurrence of the alleged offense as "on or about the 21st day of August, 1955", and at the trial the act relied upon was even more specifically identified and isolated. Taking judicial notice of our own records it appears the charge given here by the trial court is essentially the same as that given in the Elias case. We adhere to the pronouncements made in the Elias and Hash cases, supra; hence it is unnecessary for us to elaborate further.

Finally it is urged that the trial court erred in refusing to grant a new trial upon the following ground:

> " * * * The prosecuting attorney placed before the jury the personality and masculinity of the defendant as well as insinuations reflecting on his relationship with his mother, making a fair and impartial consideration of the case impossible."

Apparently this objection is predicated upon certain questions asked of defendant by the county attorney and the latter's comments to the jury thereon. First, defendant was questioned concerning some women's costume jewelry and watches found in his room; he asserted they were his and did not belong to the women patients at the home. Secondly, testimony was adduced that except for one brief period the 39-year-old defendant had always been employed by, or at least stayed close to, his mother, the claimed inference being that he was "tied to his mother's apron strings" or was at least "mamma's boy". Defendant also points to the claimed harmful effects of the following two unanswered questions asked him on cross-examination, viz.:

> "Q. Isn't it also a fact you had about ten balloons tied to a string full of water in your room, too, Mr. Colvin?
>
> *  *  *  *  *  *
>
> "Q. You like balloons, do you, Mr. Colvin?"

It is also asserted certain damaging comments were made in the prosecutor's summation. Referring to the jewelry, he stated this "indicates the character and personality of the individual." This was followed by remarks in which the county attorney related defendant's close association with, and dependency upon, his mother over the years prior to the alleged assault, stating in effect that by his commission of the offense, "he asserts his masculinity." We cannot accept this assignment as being meritorious. We note that objections were not raised at the time to any of the comments made in the summation. Further, the record shows no answers were given to the questions concerning the balloons, as the court properly sustained defendant's objection to both questions and coupled with it an implied rebuke to the county attorney following the last objection: "Mr. Castro, I think that is absolutely immaterial." As no answers were given, no request to instruct the jury to disregard same was made. No further reference was ever made to the "balloons".

Defendant claims that despite the fact no answers were given to these questions, the innuendo could not be erased from the minds of the jury. Perhaps we are naive, but none of the members of the court (hence, probably none of the jury) can perceive what innuendo was intended. As to the other matters, defendant appears to make "much ado about nothing". As was

stated in State v. Jordan, 80 Ariz. 193, 200, 294 P.2d 677, 682,

"* * * a prosecutor is allowed considerable latitude in a discussion of the evidence, the possible facts the jury may find and the reasonable inferences that may be drawn therefrom."

We find no merit to these assignments of error.

Judgment affirmed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.